Good morning, Your Honors. Jules Welsh on behalf of Appellant James Roane. I'd like to pick up where my esteemed colleague has left off today. Whether the Vicar Statute 18 U.S.C. 1959 acts as a valid crime of... Are you also adopting the Tipton Appellant's arguments with respect to the CCE murders? Your Honor, it is our position that the CCE murders, your determination on the CCE murders and whether they qualify as valid crimes of violence to satisfy the Force Clause does not matter in Appellant Roane's case. Do they do or do they not qualify as predicates? We maintain that they do not qualify as crimes of violence, but would ask to rest our argument on this point on our briefings because it is our position that this case, in Mr. Roane's case, rises and falls on your determination of the Vicar predicates. If I may turn to the Vicar predicates in that case. Manley laid out a straightforward... Have you got a better case than Mr. Tipton there? Yes, Your Honor. You're distinguishable from him? Yes, Your Honor. And I can turn straight to the harmlessness analysis if that suits you as well. You're essentially all but conceding that the CCE murders are crimes of violence. I mean, a Manley precedent pretty much covers that directly. CCE murders are crime of violence and as for the verbs counseling or commanding, a word is known by the company it keeps and the company that those words are keeping, they're all in that company of aiding and abetting. So you have to take the word counseling and all the rest in accord with the company it keeps. Yes, Your Honor. For the purpose of the argument going forward, hearing the position of the bench, it is our position that Mr. Roane can prevail without the CCE predicate in our favor. You're talking about the Vicar murder. That's correct, Your Honor. To perform a categorical analysis, as we know, we must determine what crime with what elements form the basis of the conviction. And in Manley... Vicar is an acronym for something under the Racketeering Act. That's correct. And in Manley... Murder in aid of a racketeering. That's correct, Your Honor. Those acronyms have been bothering me for about 60 years. And the numbers are not even much better. I understand murder in aid of racketeering better. Yeah, but I don't know, everybody calls it Vicar or something. They got made up all these... Well, this court in Manley has directed us to analyze whether a Vicar offense may serve as a valid 924C predicate under the first clause by analyzing the underlying statute charged in the offense. Here, there was no underlying statute charged in the offense. To find out what statute, what kind of murder he was charged with, we looked at the indictment, right? That's correct, Your Honor. It doesn't have a statutory section that points us to Virginia murder or some federal murder. But the indictment does say he knowingly, intentionally, and unlawfully caused the murder. So we know he was, the murder underlying the murder in aid of racketeering was intentional murder. Right? So what's the argument on that? Two points on that, Your Honor. The first point is that to properly charge a Vicar offense, the government must identify a specific state or federal statute or elements thereof underlying the offense. And that is a quote from Manley. To properly charge Vicar, the government must... This was a long time. This was 1992, right? That's correct, Your Honor. It was not being done then, and we know the elements because they're laid out in the indictment. So to get to what the indictment actually said, Your Honor, it also included conspiracy theory of liability. The indictment didn't. The jury instructions did, however. If we're doing categorical approach, we look at the crime that was charged and the crime that he was found guilty of, right? It charged intentional murder. But you want us to look through to the facts and see if maybe if the jury was... I mean, maybe you would have had an argument that the jury instructions were incorrect on a direct appeal. But do we get to look at that at this point? Your Honor, I believe under the modified categorical analysis, we may look to the Shepard documents, which include jury instructions and verdict forms. In addition... Why are we doing a modified approach? Because the Vicar statute is a divisible statute because it relies on the charged underlying statute, Your Honor. You're saying we don't just take the indictment that charged him with intentional murder? We don't look solely at the indictment. No, we look at the indictment and the charges, the jury instructions that were presented to the jury. Where is the jury instruction? Is the jury instruction submitted on a risk theory? The jury instruction was given, if I understand your question, Your Honor, under a conspiracy theory of liability. It stated that the jury may find guilt on the Vicar charges if the defendants did knowingly and intentionally commit or conspire to commit the crime. Your Honor, this court has found in McCollum that conspiracy to murder or maim under Vicar is not a categorical crime of violence. Is there any recklessness analysis to this? No, Your Honor. No, it was submitted on an intent instruction. Intent or conspiracy, Your Honor, and conspiracy, which is possible to convict under this, the way this was charged, is not a categorical crime of violence. Well, the instructions, as I understand it, follow the indictment, and in reading the indictment here, all these different counts, the charges talk in terms of purposeful, intentional activity. I mean, we can just take count number 10. It says that the grand jury heard the charges that Mr. Rohn did knowingly, intentionally, and unlawfully cause the murder of Peyton Morris Johnson. And then there's the Vicar election, the language is a consideration for promise or agreement to pay, or for the purpose of maintaining a position in an enterprise. But, again, the indictment is just laden with language of intentionality and purposefulness. The Vicar statute, I guess it's the third element, talks about purposeful murder in order to maintain one's position in the enterprise. And the instructions on this, as I understand it, reflected the charges that the grand jury handed down. And the Vicar statute, in and of itself, without any look through, requires purposefulness. We disagree, your honor. You don't need necessarily to identify exactly what the, whether the murder is a matter of some of the federal statute or Virginia statute or common law. We don't need to look through. We disagree, your honor. This court in Manly explicitly directed us to look through and treat the underlying statutory charges underlying the Vicar predicate as elements of the Vicar predicate itself. I think that the Keene decision allows us to take the Vicar statute on its own terms and that we do not need to look through. Your honor, if... The Vicar statute, the third element of it or whatever, itself requires purposefulness and intentionality. And I must say, even if we were to adopt your view that we have to look through, looking through the Vicar statute, let's say Virginia common law or whatever, there are very few murder offenses, either under Virginia common law or Virginia statute or whatever, that allow for the proposition of a conviction under a recklessness theory or under a negligence theory. Even if you look through, murder is something you intentionally do. It is the paradigmatic crime that the framers of the force clause or the elements clause had in mind. Murder, that's exhibit A. Your honor, if I may respond, felony murder is a type of murder that does not fall under the force clause following Davis and Borden. And felony murder is exactly the type of murder that is allowed by the generically charged Vicar statute. If we choose to do a categorical analysis applied to the Vicar statute as it was indicted, we must analyze whether generic murder, the broadest category, which is the crime actually charged, is a crime of violence. The least culpable conduct, punishable under the broad umbrella of generic murder... How do you get around the purposeful language in the Vicar statute? I mean... Yes, your honor. Because that's the progenitor of it all. That's the root crime. And that is a purposeful crime. There's a very defined, distinct, distinctive purpose to the Vicar statute, and that is someone intentionally commits murder for either one of two purposes. One is to get some money to support whatever enterprise they're engaged in. And then the other purpose is to advance in the ranks to maintain one's position or to show, oh, I'm a tough guy as a member of this gang or a member of this criminal enterprise. And look at me, I can commit murder. Did I get a promotion to the second in command or something? And that's what Vicar goes after. They're collective enterprises that support themselves through drugs and money, which is one of the Vicar purposes. And where loyalty and fealty to the gang is often measured by who's going to commit the most intentional and atrocious acts to make sure that a drug deal, that nobody's cheating on somebody else or that somebody is disloyal to somebody else. That's what Congress wanted to get after. And it's hard to get around that. Your Honor, to go to your initial question of intentionality, that is precisely why felony murder is not a categorical crime of violence because it does not require the intentional use of force. And this is from your decision in Jackson. It only requires the mens rea to complete the underlying felony, which need not be violent. It is that precise reason. That doesn't apply to Mr. Roan, right? Because his indictment charged, his underlying murder was intentionally caused the murder. That's not felony murder. Intentionally caused encompasses felony murder in our position. No, it doesn't. You intentionally caused the felony that then results in a murder. But intentionally caused the murder is not felony murder. Your Honor, we respectfully disagree. We believe that the language of the indictment does encompass felony murder liability. If I may very briefly turn because I see my time is almost up to the harmlessness analysis. I'd like to draw the court's attention to count 15 of Mr. Roan's conviction. Count 15 is predicated on one count of Vicar murder, one count of Vicar maiming, and one count of 846 drug conspiracy. We believe that the jury only considered the invalid Vicar predicates to reach its decision. Because... Is there a special verdict? The verdict did not... We don't know. So, if I may... You didn't get a special verdict. You got a general verdict. If I may, Your Honor, the jury was not instructed on the 846 predicate at all. And the... The thing comes up here, 30 years, more than 30 years after the trial, we're arguing about the instructions. Which we review, if it's on direct appeal, for abuse of discretion. Yes, Your Honor. Challenging them 35 years, 31 years later, and claiming it's legal error. There has been a substantial change in law, Your Honor, following Davis, that has been made retroactive by the Supreme Court. And that is why we bring this litigation now. I'm sorry. Go ahead. I realize that Davis made a substantial change in the law. It invalidated the residual clause. We all accept that. But, unfortunately for you, it left the force clause and the elements clause intact. And that is what murder involves. And that is what language in which the Vicar Statute speaks. And, unfortunately for you, the Borden decision indicates that there's a hierarchy of mens rea. And that recklessness will not suffice. But then the Supreme Court goes on at Borden to say the mens rea of willfulness and knowingness, they belong at the top of the hierarchy of mens rea. And nothing we say in the opinion today of the Supreme Court should reflect doubt on willful, knowing, or purposeful behavior. And then that is what we have before us here. That is what the Vicar Statute is aimed at. And we have an obligation here to follow Congress. And I might add common sense. But the problem for you is that it left the force clause intact. And the problem for you additionally is that it says knowingness and willfulness, you know, they are the crown jewels of mens rea. And, you know, sometimes even the most able and capable lawyers can't get around all the boulders in the road. That's my problem. I understand, Your Honor. But I will point out that this case is not like the typical Vicar case. We don't contest that Vicar is typically a valid crime of violence when the underlying statutes charged qualify as crimes of violence. For example, in Manly, I see I'm over my time. May I just finish this point? You sure may. Thank you, Your Honor. In Manly, the conviction was predicated on Virginia offenses. The court found that the Virginia offenses qualified as crimes of violence. And therefore, the Vicar conviction was a valid predicate. Here under the force clause, we may not make the same conclusion because there was no underlying crime charged, Your Honor. We must instead base our analysis on generic murder, which does encompass felony murder, which is not a crime of violence. That's all assuming we look through. You need not look through to see that the Vicar charges were only charged under generic murder, Your Honor. Do you have anything else you'd like to add? I want to, you know, I took up some time with my questions. I don't want to cut you short. I mean, I have plenty to say, but I can save it for rebuttal, Your Honor. Okay. You've got some rebuttal time. Thank you so much. Thank you. Mr. Cook. May it please the court. So there are four 924C offenses at issue here for Roan. There's count six, count nine, count 12, and count 15. The first three, six, nine, and 12, all have 848E predicates. And so the analysis we went through with Tipton would cover those counts. That leaves count 15, which has an 848, or I'm sorry, 846 conspiracy predicate, and then two Vicar counts, Vicar murder and Vicar maiming. The Vicar murder was of Torek Brown. As Judge Rushing has pointed out, the indictment charged that the defendant intentionally caused the murder. That puts us in the category that as manly held, a Vicar murder offense in Virginia satisfies the elements clause. And essentially we're then at the point of just arguing about the harmlessness inquiry, about either whether there was the jury wouldn't have thought this was a first or second degree murder, or whether the jury wouldn't have convicted him based on the Vicar murder count. I agree that the looking through doesn't help. It doesn't help the appellate, but is it the government's position? I was under the impression you did not feel that given the language of the Vicar statute, that looking through was necessary. Right, so you're referring to the analysis from this court's opinion in Keene. Yes. And under Keene, the way you should analyze a Vicar count is that the government has to satisfy two standards. The first is an enumerated federal generic offense murder, which in this case 1111 would be the natural statute to go to and look at. And as courts have consistently held, 1111, 18 U.S.C. 1111, is a crime of violence. Do we need to go there? You can stop there because I think that this statute adequately alleges in the jury plainly found an 1111 offense. And in doing the harmlessness analysis, I don't want to lose sight of what we're talking about in terms of the facts of this case. The facts of the murder of Torrick Brown is that Roan was having trouble with Brown, and so he showed up, Roan with Johnson. What I want to come back to is this case was submitted to the jury, as I understand it, under a Vicar, under the Vicar statute. Right. So you don't need to identify a Virginia offense in the instructions, is that correct? I think you could instruct on, well, let me be careful. I think that the way you would do it today is that you would appropriately instruct on both Virginias. As long as the evidence is there to prove it, you don't need to instruct it. Well, and further, I don't think there is any, you can identify a material difference between Virginia murder law and federal murder law 1111 here. There just isn't a material difference. And the facts of this case are overwhelming. Can I ask you a question about the looking through before we get to the facts? I'm a little concerned by the hypothetical that someone could, for the purpose of gaining entrance to an enterprise, murder someone. So for the purpose of gaining entrance, they commit a felony, and someone is murdered in the course of that felony. Would that qualify? If we don't look through, can we say that purposeful applies to the murder? Or is it possible that someone could be convicted for felony murder without, do you follow what I'm saying, if they don't have a more specific language in their indictment or a statute that's pointed to? I do understand what you're saying, Your Honor. So looking at the vicar purpose in the statute, when you have, if you have felony murder as the enumerated crime, would the purpose go to the felony that is the felony in the murder, or would it go to the murder? Right. And I think that this is a quirk of how the vicar purpose works, that basically the vicar purpose is going to take care of and eliminate a Borden problem in every vicar crime except possibly vicar murder where it's felony murder. Because I agree, I think that the purpose could attach to the felony, not the murder. Now, felony murder in Virginia is charged in a separate statute. So are you saying we need to look through whenever it's murder? I think the vicar purpose requirement would not take care of the mens rea problem. So we need to look through to determine the mens rea. Yeah, and the limited instance where you had felony murder as the vicar murder. But in this case, you have the problem that both Virginia law, felony murder is a distinct statute, and that's why Manly came out the way it did. Well, and here you have an indictment that charges them with intentional killing, and we've said many times in many cases that intentional killing, intentionally murdering someone is not felony murder. Right. It's a different mens rea. That's true. And I want to not lose sight of the facts of this case are plainly first-degree murder. The defendants wanted to go and get Torek Brown because they were having trouble with him. The medical examiner's testimony, and this is at Joint Appendix Page 1146, was that Brown was shot 16 times. Martha McCoy, who was there in the room with him, was shot six times. That's Joint Appendix 1048. And McCoy testified, as Martha McCoy testified at trial about the crime, Joint Appendix Page 1047. She described the shooting. So did one of her children, who was also a witness. And all of that testimony is nothing but first-degree murder. These people, the defendants, burst into the apartment or knocked on the door and then came in and started shooting because they had come to get Brown because they were having trouble with him. And so both from the standpoint of, like, how is this charged? What was the jury had in mind? I mean, the facts are nothing but first-degree murder. And since we are now talking about collateral review for a procedurally defaulted claim and whether there is harm from a possible error in the jury instructions, it's on the defendant on these facts. This is impossible. There's no way he should be able to prevail in a case where the murder victim was shot 16 times. I mean, that's not felony murder. Mr. Cook, you said earlier that, talking about Section 1111, the federal definition of murder, that there's no material difference between the federal definition and the Virginia definition. No material difference. That's right. What, if anything, is the immaterial difference? I guess I'm using a hedge word. I don't know of any difference. You're saying there's no difference between the federal definition of murder and the Virginia definition of murder. Right. There's no distinction between Virginia law and federal law. I don't think there is. No one has identified one. All right. I can strike the word material out of my notes. Yeah. Let me flag one little difference that is not a difference that matters here. If you look at the Tenth Circuit's recent opinion in Kepler that I cited in a footnote, they drop a footnote and they say, it's not clear whether there is such a thing as second-degree felony murder under 1111. And this is an issue that there's not a lot of discussion in the cases about, but it is a live question about whether there even exists felony murder, second-degree felony murder. There's plainly first-degree felony murder that are enumerated in 1111. But whether there's second-degree felony murder is an open question. And the Tenth Circuit dealt with that, as I read Kepler, by saying, well, basically, not basically, for second-degree murder, you always have to have the intent that you would have outside of felony murder. And then, of course, you can commit a felony in the course of the murder. So basically what they did is they said, yeah, there's this thing about felony murder, second-degree murder, but it's completely redundant in the sense that you're just approving an additional felony on top of all the other elements of second-degree murder. And that's why they thought that 1111 was, even for second-degree murder, an Elements Clause offense. But every count in the indictment charged Roan with intentionally causing the murder of a named victim. This isn't really a conspiracy case. I mean, the murder happened. Right. It's not even a second-degree murder. It's a premeditated murder. The defendant either committed it or aided in abetting it. And the murders in this case seem to be involved first-degree murder and were premeditated. That's right. And to what extent, we're not prohibited from looking at those facts, are we? No, and definitely not in doing the harmlessness inquiry. And another fact I'd throw into the harmlessness inquiry is that the Torrick Brown murder was the fifth murder that these defendants carried out in that month-long murder spree, which I think also sheds light on the mens rea. What I am concerned about here is that when you take 924C and then you need a predicate crime of violence, it can be a CCE murder or it could be a drug offense if it's not accredited COV. And then it could be a Vicar murder. I would think all those would be valid crime of violence predicates. And I still wonder how far we need to go when you have an indictment that explicitly charges a Vicar murder and actually quotes the purposefulness of the murder and the instructions which reflected those charges. Why isn't that enough to establish a predicate crime of violence? It doesn't aid the appellant's case to go into Virginia common law because the common law of most states requires intent in order for a murder conviction to result. But why add the extra step? Why make it more complicated than it needs to be when we're talking about boredom and theories of intent and where the theory of intent is spelled out in the relevant federal statute. I agree with that and a lot of what I've said here I feel is kind of backup arguments about going further down the rabbit trail. Do you agree with that? I do. Because we can have these extra steps and then we can get all snarled up in whether a predicate crime of violence, a Virginia common law offense, or a Virginia statutory offense. And we can talk about the categorical approach to the Virginia statutes and everything. And you know that gets awfully snarled. And I'm just not certain on the board which is what the challenge is here. The basic fundamental point of boredom is whether the case was submitted under a risk theory or a recklessness theory or whether it was submitted under intentional as an intentional killing. And the Vicar statute in terms of the elements that it lays forth and in terms of what the indictment says, the instruction says, would seem to answer that question and in and of itself be sufficient. Yes, I mean this was charged as an intentional murder. The facts were an intentional murder. Nobody would have been defending this on a well it was really just some sort of like felony murder or something like that. But it's important to keep the analysis in these cases clean and straightforward. And I intend no disrespect for anybody to say that the categorical approach and the crime of violence jurisprudence and everything is very, very complicated. But when you get to a situation where the Supreme Court lays out what the criteria is and the statute reflects what the Supreme Court says the criteria is, the indictment charges according to those criteria, the jury convicts according to those criteria, that would seem to me to be faithful to the Supreme Court and to the commands of Congress. Do you see what I'm saying? Yes, and I agree with that. This is a successive 2255. We're not at the stage of parsing in a microscopic way whether there was error in the jury instructions. All right, thank you. Thank you, Your Honor. All right, happy to hear from you in rebuttal. Thank you. Thank you. If I understood the government's position, they agree that the intent element of the Vicar statute goes to the underlying felony charged. For the purpose of the categorical analysis, we may not look to the actual conduct of these incidents. We must look to the statute and what was before the jury, and ask whether the least culpable conduct before the jury qualifies as a categorical crime of violence. Here, as the Vicar counts were charged, they do not. We can't simply insert hypothetical statutes that may have served as a predicate where none were before the jury. That is simply not how the categorical analysis operates, and I agree with you, Justice Wilkinson. It's a complicated analysis, but we are trying to be as faithful to the Supreme Court as possible here. Trust me, we're all trying to do that. Indeed. The most simple way to resolve this is to see that the only thing charged in this Vicar count was generic murder, and understand that under the categorical analysis, the least culpable conduct possible to convict on generic murder is a felony murder theory. The government doesn't need to charge a look-through offense. The government needs to charge a Vicar offense, pure and simple. And that's exactly what the indictment lays out with all the intentionality language involved. And if the Vicar statute is what the government charges, and the jury finds the elements of the Vicar statute as charged, that's the way we deal with every other crime in the whole United States. Yes, Your Honor. We take the statute, we look at the elements, we charge the statute, we charge the elements, and the jury either convicts or acquits. And that is the normal way in which we deal with criminal offenses. Yes, Your Honor. And it's worked pretty well over time. In the case of the Vicar statute, the Fourth Circuit has explicitly said that the underlying crime charged is an element of the statute. You may actually not charge a Vicar crime without these underlying statutory elements, or an enumerated list of elements that would qualify. And since it is our position that the Vicar counts are invalid, again, count 15, in which the jury only considered the invalid Vicar predicates, must be invalidated by this court. And we would ask that if any of these 924C convictions are returned, this court remand to the district court for further proceedings. All right. Thank you. Thank you.
judges: J. Harvie Wilkinson III, Robert B. King, Allison J. Rushing